# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MILES COOKE,

               Petitioner,

      v.

DERRICK E. OBERLANDER, et al.,

               Respondents.

CIVIL ACTION NO. 3:22-CV-00022

(MEHALCHICK, M.J.)

## MEMORANDUM

Petitioner Miles Cooke ("Cooke") initiated this action on January 5, 2022, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against Respondents Superintendent Derrick E. Oberlander, District Attorney of Dauphin County, and the Pennsylvania Attorney General's Office (collectively, "Respondents"). (Doc. 1). Cooke is an inmate of the State Correction Institute at Forest, Pennsylvania ("SCI-Forest"). (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 5). For the following reasons, the petition will be dismissed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On May 30, 2014, Cooke and his brother, Justin Cooke, shot and killed the victim, Ronald McGruder (the "decedent"), near the corner of Hanover and Cameron Streets in Harrisburg, Pennsylvania. (Doc. 1, ¶ 1). Two nights before the murder, Justin Cooke and the decedent had gotten into a heated argument when the decedent blamed Justin Cooke for killing the decedent's friend Warren Beasley in 2013. (Doc. 1, ¶ 2). On the night of May 29, 2014, the decedent went out drinking with his friend James Moffitt and surveillance video at the bar showed that both Cooke and Justin Cooke were at the same bar. (Doc. 1, ¶ 3). The

video also showed Cooke, Justin Cooke, and the decedent leave together in a tan Audi at 1:46 a.m. on May 30, 2014. (Doc. 1, ¶ 3). Cooke and Justin Cooke provided identical voluntary statements to police shortly after the murder, confirming the clothing they were wearing, the precise route they took after leaving the bar with the decedent, and that they were driving a tan Audi owned by Cooke's girlfriend. (Doc. 1, ¶ 6). Police arrested Cooke on October 2, 2014, the day police obtained arrest warrants for both Cooke and Justin Cooke. (Doc. 1, ¶ 7). Cooke was charged with Murder, 18 Pa. C.S.A. § 2502, and Conspiracy – Murder, 18 Pa. C.S.A. § 903, under a theory of accomplice liability pursuant to the docked CP-22-CR-0000932-2015 for offenses alleged to have occurred on May 30, 2014. (Doc. 3-2, at 37).

At trial, Courtney Williams testified for the Commonwealth that the decedent had been staying with him for a couple of months until his death. (Doc. 3, at 2). Williams testified that Justin Cooke and Cooke's girlfriend, Shavon Gillespie, came over to his house and got into an argument over the killing of Warren Beasley. (Doc. 3, at 2). Williams testified that he heard the decedent tell Justin Cooke: "[I]f you want to kill me, if you feel some type of way and you want to do something to me, my heart is on my sleeve. So if you got to take a shot, take a shot." (Doc. 1, ¶ 2; Doc. 3, at 2). Next, James Moffit, who was with the decedent on the night of his murder, testified for the Commonwealth. (Doc. 3, at 2). Moffit testified that on the evening the decedent died, they had been out together drinking at local bars and that Cooke and Justin Cooke were both present. (Doc. 3, at 2-3).

Jasmine Bullock, an eyewitness to the murder who resided on Hanover Street, also testified for the Commonwealth. (Doc. 3, at 3). Bullock testified that she awoke to screaming from the street and looked out her window to see Cooke and Justin Cooke standing over the decedent on the ground and shoot him twice in the head. (Doc. 1, ¶ 4; Doc. 2, at 3). Bullock

called 911 at 1:58 a.m. an provided clothing descriptions matching Justin Cooke as the shooter and Cooke nearby. (Doc. 1, ¶ 4, Doc. 3, at 3). After the shooting, Cooke and Justin Cooke ran toward their car, entered the vehicle, and drove away. (Doc. 1, ¶ 5; Doc. 3, at 3). Next, the Commonwealth called William Kimmick, a forensics investigator with the Harrisburg Bureau of Police, who provided testimony as to video surveillance that showed a light colored vehicle with a sunroof traveling north on 13th Street. (Doc. 3, at 3). Chief John Goshert of the Criminal Investigation Division of the Dauphine County District Attorney's Office testified as to the scene reenactment that he performed using the vehicle believed to have been involved in the incident, a light colored Audi. (Doc. 3, at 3). Detective Lachini and Detective James Glucksman of the Harrisburg Bureau of Police testified as to Cooke's cell phone records on the night of the murder. (Doc. 3, at 4).

On October 15, 2015, a jury convicted Cooke of First Degree Murder and Criminal Conspiracy, and Cooke was sentenced to the statutorily mandated term of life in prison. (Doc. 1, ¶ 8; Doc. 3-2, at 346). Cooke filed a timely post-sentence motion, which was denied by operation of law on February 23, 2016. (Doc. 1, ¶ 9). Cooke filed a timely notice of appeal and the Supreme Superior Court affirmed the judgment of sentence on September 27, 2017. (Doc. 1, ¶ 9). On May 14, 2018, Cooke filed a timely *pro se* Post-Conviction Relief Act ("PCRA") petition for which the court appointed counsel. (Doc. 1, ¶ 10). On December 27, 2018, the PCRA counsel filed a petition to withdraw with an attached "no-merit" letter pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley,* 550 A.2d 213 (Pa.Super. 1988) (*en banc*). (Doc. 1, ¶ 10). On April 4, 2019, Cooke filed an amended PCRA petition, which was dismissed on December 17, 2019. (Doc. 1, at 7). On January 13, 2020, Cooke filed an appeal to the Superior Court of Pennsylvania, which the

court dismissed on February 24, 2021. (Doc. 1, at 7). On May 17, 2021, Cooke filed a petition for allowance of appeal to the Pennsylvania Supreme Court. (Doc. 1, at 7).

On January 5, 2022, Cooke filed the instant petition for writ of habeas corpus. (Doc. 1, at 7). On February 3, 2022, Respondents filed a response to the petition. (Doc. 3). Having been fully briefed, this petition is now ripe for disposition.

II.   **HABEAS CLAIMS PRESENTED**

Cooke presents the following grounds for relief in his federal habeas petition:

1)   That defense counsel provided ineffective assistance by failing to introduce video surveillance demonstrating that Cooke did not murder Warren Beasley. (Doc. 1, at 12);

2)   That defense counsel provided ineffective assistance by failing to inform Cooke that a plea offer was available. (Doc. 1, at 14);

3)   The defense counsel provided ineffective assistance by failing to object to the admission of a reenactment video. (Doc. 1, at 16);

4)   The defense counsel provided ineffective assistance by failing to raise a *Brady* violation for the Commonwealth's failure to disclose that witness James Moffitt was an informant. (Doc. 1, at 17); and

5)   That the trial court abused its discretion by admitting inadmissible hearsay testimony by Courtney Williams regarding declarations by the decedent. (Doc. 1, at 19).

The Court addresses each of these grounds below.

III.   **STANDARDS OF LAW**

Cooke brings his petition pursuant to 28 U.S.C. § 2254, which permits federal courts to issue habeas corpus relief for persons in state custody. While a prisoner may properly challenge the "fact or duration" of his confinement through a § 2254 petition, *see Preiser v. Rodriguez*, 411 U.S. 475 498-99 (1973), the statute sets "several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen*

4

*v. Pinholster*, 563 U.S. 170, 181 (2011). Further, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."). Rather, federal habeas review is limited to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68. As such, a writ of habeas corpus is an " 'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)).

The statutory text of § 2254 additionally requires that federal courts give the appropriate deference to the legal rulings and factual findings of state courts made during criminal proceedings, and provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;[1] or

---

[1] A state court decision is "contrary" to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

A state court decision is an "unreasonable application" of clearly established federal law if "(1) 'the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular . . . case;' or (2) 'the state court either unreasonably extends a legal principle from our precedent to a new context where it should

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Thus, given these deferential standards of review, federal courts frequently decline invitations by habeas petitioners to disturb the considered views of state courts. *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006); *see also Warren v. Kyler*, 422 F.3d 132, 139-40 (3d Cir. 2006); *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002).

Nonetheless, with respect to § 2254(d)(1), the Supreme Court defines "clearly established federal law" as "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Further, to warrant relief under § 2254(d)(1), a state court's "unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Regarding 28 U.S.C. § 2254(d)(2), "a determination of a factual issue made by a State court shall be presumed to be correct" unless a petitioner can show, by clear and convincing evidence, that the finding was erroneous. 28 U.S.C. § 2254(e)(1); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Moreover, habeas relief will not be granted pursuant to § 2254(d)(2) if a reasonable basis existed for the state court to make its factual finding. *See Burt v. Titlow*, 571 U.S. 12, 18 (2013).

---

not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001) (quoting *Williams*, 529 U.S. at 407).

IV.   **DISCUSSION**

A.   INEFFECTIVE ASSISTANCE OF COUNSEL

1.      **Standard of Review**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See Strickland*, 466 U.S. at 687-88.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct. *Strickland*, 466 U.S. at 680. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

### 2. Counsel was not ineffective of by failing to introduce video surveillance of Beasley's murder.

Cooke asserts that trial counsel and/or PCRA counsel was ineffective in failing to introduce video surveillance of the murder of Beasley to demonstrate that he was not involved in Beasley's homicide, thereby exculpating him from the homicide of the decedent, for which Cooke received the life sentence at issue. (Doc. 1, at 12-14). Cooke avers that defense counsel failed to rebut the Commonwealth's theory that the decedent was murdered because he presented a threat to Cooke. (Doc. 1, at 14). Respondents submit that Cooke's claims are procedurally defaulted to the extent that he raises new arguments in the instant petition beyond the contours of his appeal of the denial of his PCRA petition. (Doc. 3, at 6). Further, Respondents contend the Commonwealth's theory at trial was that Justin Cooke and the

decedent fought and the decedent had accused Justin Cooke of murder, so the fact that Cooke did not commit the Beasley murder is not relevant. (Doc. 3, at 7-8).

In the "no-merit" letter filed with the PCRA court, PCRA counsel explained that Cooke sought to raise various ineffectiveness claims based upon the existence of a video that "would demonstrate that [Cooke] was not involved in Mr. Beasley's homicide thereby somehow exculpating [Cooke] from the homicide of" the decedent. (Doc. 3-3, at 89-90). PCRA counsel argued that Appellant's "non-involvement" in Beasley's homicide would not provide a basis for relief:

> Evidence existed from various other sources to include both witness testimony and surveillance video that placed you and the vehicle you were operating in the direct vicinity of the victim at the time the homicide occurred. The Commonwealth's theory of the case attributed Mr. McGruder's murder to a desire to silence him since he had been implicating you in Mr. Beasley's homicide however the Commonwealth never attempted to directly implicate you in the Beasley homicide. Thus, a video that demonstrates that you did not kill Mr. Beasley is not and would not have been exculpatory as…to Mr. McGruder's murder. Since the video in question would not, on its face, [have] been exculpatory in your case, failure of counsel to attempt its introduction was not ineffective . . . .

(Doc. 3-3, at 90).

The PCRA court denied relief, finding that Cooke failed to establish any allegations of error by trial counsel. *Commonwealth v. Cooke*, 249 A.3d 1182 (Pa. Super. Ct.), *reargument denied* (Apr. 27, 2021), *appeal denied,* 267 A.3d 486 (Pa. 2021). Appealing the decision to dismiss his PCRA petition, Cooke set forth the following ground for relief: "The [PCRA] court erred by denying [Appellant]'s PCRA claim of PCRA counsel's failure to raise ineffective assistance of trial counsel for failing to present the videotape of Warren Beasley's murder, that would have shown that Ronald McGruder knew that [Appellant] did not kill Beasley." *Cooke*, 249 A.3d 1182. Upon consideration of the record, the Superior Court of

Pennsylvania affirmed the PCRA court's order denying PCRA and found that Cooke's claim of ineffective assistance of counsel for failure to introduce video surveillance of Beasley's death was meritless. *Cooke*, 249 A.3d 1182. Adopting the reasons stated in the opinion entered by Judge Richard A. Lewis on February 12, 2020, the Superior Court explained:

> Specifically, Judge Lewis noted that Appellant was charged with the murder of Mr. McGruder, and neither Appellant nor his brother were charged with the murder of Mr. Beasley. Any evidence regarding the murder of Mr. Beasley was irrelevant to the issue of whether Appellant killed Mr. McGruder. As such, there was no merit to Appellant's claim that trial counsel was ineffective for failure to introduce such evidence. (*See* PCRA Court Opinion at 5). Moreover, any mention of Mr. Beasley's murder was used to establish motive and did not constitute direct evidence in the instant case. (*Id.* at 7).

*Cooke*, 249 A.3d 1182.

Upon review of the instant petition and the Superior Court's determination, the Court finds that Cooke has not developed or substantiated his bald statements to demonstrate that the issues underlying his ineffectiveness claims have merit. While Cooke argues the video surveillance of the murder of Beasley would rebut the Commonwealth's theory that the decedent was murdered because he presented a threat to Justin Cooke by accusing Justin Cooke of murdering Beasley, Cooke has failed to present evidence that the Superior Court's determinations were contrary to clearly established case law or were "based upon an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2). Therefore, the Court finds that this claim has failed to meet the standards required for habeas relief and recommend that Cooke's requested relief be denied on this claim.

### 3. Counsel was not ineffective by failing to inform Cooke that a plea offer was available.

Cooke asserts that trial counsel failed to offer Cooke appropriate advice concerning the Commonwealth's plea offer by not offering professional advice on the decision whether to accept the plea bargain offer. (Doc. 1, at 14-16). Respondents argue "although trial

counsel's alleged advice given to [Cooke] could have been more thorough, it does not rise to the level of ineffective assistance of counsel." (Doc. 3, at 10). Further, Respondents state Cooke has not shown a reasonably probability that he would have accepted the plea offer has defense counsel acted differently. (Doc. 1, at 10-11).

Upon appeal of the PCRA court's unfavorable determination, Cooke argued the PCRA court erred by denying Cook's claim of PCRA counsel's ineffectiveness for failing to advise him concerning a plea offer that was available. *Cooke*, 249 A.3d 1182. The Superior Court affirmed the PCRA court's decision to deny relief and found that Cooke's claim of ineffective assistance of counsel for failure to inform Cooke that a plea offer was available is meritless. *Cooke*, 249 A.3d 1182. Adopting the PCRA court's reasoning, the Superior Court explained that "[r]egarding the plea offer, Judge Lewis observed that there is no evidence of record that the Commonwealth ever made an offer, and Appellant failed to develop his claim in a manner warranting an evidentiary hearing. (*Id.* at 6)." *Cooke*, 249 A.3d 1182.

Cooke has not developed or substantiated his bald statements to demonstrate that the issues underlying his ineffectiveness claims have merit. Cooke argues "counsel chose to neglect his duty to give [Cooke] the benefit of his professional advice on [the] crucial decision whether to accept the plea bargain offer; his offhand presentation , made for reasons that was contrary to his client's interests, failed to make clear to [Cook] the risks, hazards or prospects of the case." (Doc. 1, at 15-16). However, Cooke has failed to present evidence that the Superior Court's determinations were contrary to clearly established case law or were "based upon an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2). The Court agrees with the Superior Court's analysis on this issue as there is no evidence in the record

the Commonwealth ever made a plea offer. Therefore, the Court finds that this claim has failed to meet the standards required for habeas relief.

### 4.   Counsel was not ineffective by failing to object to the admission of a reenactment video.

Cooke argues that trial counsel was remiss in failing to object to the admission of a reenactment video and Detective Goshert's testimony. (Doc. 1, at 16-17). Cooke claims the reenactment video, which was created by Detective Goshert using a vehicle that was allegedly the same vehicle used on the night of the underlying incident, was misleading because the poor quality of the original video surveillance and distorted image of the vehicle used in the crime misled the jury to believe that the vehicle in the reenactment was actually the same vehicle in the original video. (Doc. 1, at 16). Cooke submits that the jury was left to infer that the vehicles were the same. (Doc. 1, at 16). In response, Respondents state "[Cooke] raises no issue regarding the authentication of the video, as such the Commonwealth will simply note that the parties entered into a stipulation regarding the foundational requirements for all videos admitted at trial." (Doc. 3, at 11). Further, Respondents argue the demonstrative reenactment video was necessary for the legitimate purpose of clarification "to render more comprehensible the raw footage of the vehicle traveling along the same road." (Doc. 3, at 11). Respondents contend "defense counsel had ample reason not to object where admission of the demonstration was proper." (Doc. 3, at 12).

Appealing the decision to dismiss his PCRA petition, Cooke set forth the following ground for relief: "The [PCRA] court erred by denying [Appellant's claim of PCRA counsel's failure to request a limited admissibility instruction and/or failing to object to the admission of the Commonwealth's car reenactment on the basis that it was not offered to illustrate any scientific principles but rather then to depict the Commonwealth's version of events in which

the reenactment video was dissimilar and outweighed the probative value of the reenactment evidence." *Cooke*, 249 A.3d 1182.  Adopting the PCRA court's reasoning, the Superior Court explained that "[r]egarding the admission of the "car reenactment" video, the trial court properly admitted this demonstrative evidence, the jury was free to assess its weight, and Appellant did not suffer prejudice due to trial counsel's failure to request a limited admissibility instruction. (*Id.* at 7)." *Cooke*, 249 A.3d 1182.

Here, since Cooke has failed to allege that the outcome would have been different if counsel had objected to the prosecutor's admission of a reenactment video, or that the Superior Court committed any error in evaluating this evidence against established legal standards, the Court finds that Cooke has failed to set forth this claim for habeas relief.

### 5.    Counsel was not ineffective by failing to raise a *Brady* violation.

Cooke submits that his PCRA counsel was ineffective in failing to raise a Brady violation for the Commonwealth's failure to disclose James Moffitt, the Commonwealth's witness, had supplied the Harrisburg Police Department with information on several occasions about criminal activity in the area. (Doc. 1, at 18).  Respondents state that Cooke failed to provide any evidence to support his assertion that Moffitt worked as an informant. (Doc. 3, at 12).

At the onset, the Court notes that while Cooke has raised the issue of prosecutorial misconduct related to the presentation of Commonwealth witness, Moffit, as an ineffective assistance of counsel claim, Cooke failed to fully develop the issue as a *Brady* violation in any state court proceedings. *See Cooke*, 249 A.3d 1182; *Commonwealth v. Cooke*, No. 516 MDA 2016, 2017 WL 3484136, at *1 (Pa. Super. Ct. Aug. 15, 2017). Rather, appealing the decision to dismiss his PCRA petition, Cooke set forth the following ground for relief: "The [PCRA] court abused its discretion by denying [Appellant's PCRA petition arguing trial counsel was

13

ineffective for failing to raise prosecutorial misconduct for the suppression of material impeachment evidence that James Moffitt is an informant for the Harrisburg Police District and/or District Attorney's Office." *Cooke*, 249 A.3d 1182. Adopting the PCRA court's reasoning, the Superior Court explained that "[r]egarding prosecutorial misconduct related to the presentation of Commonwealth witness James Moffitt, Appellant provided no evidence to support his assertion that Mr. Moffitt worked as an informant. (*Id.* at 9)." *Cooke*, 249 A.3d 1182.

Accordingly, the claim is procedurally defaulted and this Court cannot consider the claim unless Cooke establishes cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the default. *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 375 (3d Cir. 2018) (stating that federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice" resulting from the alleged constitutional violation.). Cooke has not met this burden. As a result, this due process claim will be denied as it is procedurally defaulted and federal review is barred.

Even if Cooke did fully develop this claim before the instant petition, it would still fail on the merits. Cooke argues that:

> Mr. Goode's *Brady* claim has been stymied throughout his post-conviction proceedings by the prosecutions assertions that no deal existed between James Moffitt and the Commonwealth for favorable treatment in return for trial testimony. Commonwealth witness Detective Iachini revealed for the *first* time at trial that Mr. Moffitt, the Commonwealth's witness, had supplied the Harrisburg Police Department with information on several occasions about criminal activity in the area. Mr. Moffitt had been denied that he was an informant and only came forward in [Cooke]'s case because it was rumored that he had something to do with McGruder's murder. This information given to police by Mr. Moffitt impinges on his bias, credibility and motive to give false testimony.

14

(Doc. 1, at 18).

Under *Brady v. Maryland*, a violation of due process occurs when the prosecution withholds favorable evidence from the accused and the evidence is material to the accused's guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). As *Brady* pertains to lost or destroyed evidence, failing to preserve "potentially useful evidence" does not violate due process unless the defendant shows that the police acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). "To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Roney*, 79 A.3d 595, 607 (2013). When the Commonwealth fails to preserve "potentially useful" evidence, as opposed to "materially exculpatory" evidence, no due process violation occurs unless the defendant can prove the Commonwealth acted in bad faith. *Commonwealth v. Chamberlain*, 30 A.3d 381, 402 (2011), *cert. denied*, 566 U.S. 986 (2012). "Potentially useful evidence is that of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Chamberlain*, 30 A.3d at 402 (internal quotation marks omitted).

Cooke has not presented any evidence to establish prejudice or support his assertion that Moffitt worked as an informant in the underlying criminal matter, or that such evidence

would have affected the outcome of the trial. Accordingly, to the extent that it is not procedurally defaulted, Cooke's due process claim will be dismissed as it is without merit.

    B.   TRIAL COURT ERROR

        1.    **Admitting testimony of Courtney Williams was not an abuse of discretion.**

Cooke argues the trial court erred by allowing the Commonwealth to admit testimonial hearsay at trial, in violation of his Sixth Amendment right to confront the witnesses against him. (Doc. 1, at 19). Cooke claims the testimony by Williams was inadmissible hearsay because it was testimonial in nature and Cooke had no prior opportunity to cross examine. (Doc. 1, at 21). In response, Respondents aver that Cooke failed to cite any relevant United States Supreme Court precedent that he claims the state court failed to properly apply. (Doc. 3, at 12). Further, Respondents argue the Commonwealth offered the testimony of Williams to establish motive and the testimony establishing motive is simply that the statement was made, which is not hearsay under either state or federal rules of evidence as it was not offered for the truth of the matter asserted by the statement. (Doc. 3, at 13).

Here, Cooke "faces an exacting burden in advancing such a claim, attacking an evidentiary ruling as a petitioner who challenges a state court evidentiary ruling is not entitled to habeas relief unless the error of the state court 'undermined the fundamental fairness of the entire trial." *Kunkle v. Pennsylvania*, No. 4:17-CV-898, 2019 WL 2341630, at *6 (M.D. Pa. Apr. 18, 2019), *report and recommendation adopted sub nom. Kunkle v. Commonwealth*, No. 4:17-CV-00898, 2019 WL 2324508 (M.D. Pa. May 31, 2019) (citation omitted). Accordingly, after a review of the record, the Court concludes that the relevant statement was not erroneously admitted.

In his PCRA petition, Cooke raised the argument that the trial court erred by denying his pre-trial motion *in limine* to preclude the testimony of Williams with respect to 404(b) evidence of Cook's prior bad acts through hearsay testimony regarding the decedent's statements to co-defendant Justin Cooke regarding decedent's belief that Justin Cooke was involved in another murder. *Cooke*, 2017 WL 3484136, at *2. Upon review, the Superior Court of Pennsylvania discerned no abuse of discretion or error of law by the trial court. *Cooke*, 2017 WL 3484136, at *7. In rejecting Cooke's claim that William's testimony violated his right of confrontation and affirming the judgment of sentence, the Superior Court explained:

> As described above, Williams overheard Justin arguing with McGruder two nights before McGruder's murder. McGruder blamed Appellant for killing McGruder's friend Warren Beasley in 2013. McGruder told Justin that, "if you want to kill me, if you feel some type of way and you want to do something to me, my heart is on my sleeve. So if you got to take a shot, take a shot." Trial Court Opinion, dated 7/19/16, at 3 n.6.

> Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). It is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Rules of Evidence. *Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement[,]" such as motive or the effect on the listener. *Id. See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 801.11[1] *et seq.* (2017 ed. LexisNexis Matthew Bender).

> The trial court addressed Appellant's hearsay challenge as follows:

>> Appellant argues that the statements made by Courtney Williams constituted hearsay. As discussed below, Appellant's argument lacks merit.

>> Contrary to Appellant's assertions, Ms. Williams' statements were not hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Griffin*, [ ] 515 A.2d 865, 870 ( [Pa.] 1986). When an extrajudicial statement is offered for a purpose other than providing the truth of its contents, it is not hearsay and is not excludable under the hearsay rule. *Id.* Thus, statements are admissible to establish ill-will or motive where they are not being offered for the truth of the matter

17

asserted. *See Commonwealth v. Brown,* [ ] 648 A.2d 1177, 1182 ( [Pa.] 1994) ( [o]ut-of-court statement, which was not offered for its truth, but only for the fact that it was made, was not inadmissible hearsay).

In the instant matter, the Commonwealth attempted to establish motive for killing Mr. McGruder by showing that there was ill-will between Mr. McGruder and Justin Cooke. The Commonwealth did not offer Ms. Williams' testimony to prove that Justin Cooke actually committed the killing of Mr. McGruder [or that Appellant actually killed Beasley in 2013], but to supply a motive for killing Mr. McGruder. Accordingly, this statement (that Mr. McGruder and Justin Cooke got into a heated discussion over the killing of Warren Beasley) was admissible, since it was not offered to prove the truth of the matter asserted, but rather to establish a motive for the killing[ ].

Additionally, we gave the following jury instructions in regards to motive:

> Motive is not a part of the definition of [M]urder or any other crime. The Commonwealth is not required to prove a motive for the commission of the crime charged. However, you should consider the evidence of motive or the lack of motive.... You should weigh and consider the evidence tending to show motive, along with all other evidence in deciding whether the defendant is guilty or not guilty of the crime charged. It is entirely up to you to determine what weight should be given to the evidence concerning motive.

> Now, of course there was the testimony, I believe it was the very first witness, Courtney Williams and that testimony was *offered to show motive*. She had testified about a certain conversation she heard or overheard and so forth and *that evidence was not offered to prove the truth or falsity of what happened with Mr. Beasle[y]'s killing. It was only offered to show a possible motive in the killing of Mr. McGruder. You are to accept that evidence only for that limited purpose.*

Accordingly, Ms. Williams' testimony was not hearsay and it was properly admitted as evidence.

Trial Court Opinion, dated 7/19/16, at 11–12 (footnote omitted; emphasis in original). We agree with the trial court's assessment.

As noted by the Commonwealth and the trial court, the Commonwealth did not present McGruder's statement to demonstrate that Appellant actually shot and killed Beasley in 2013. Rather, the Commonwealth presented the statement because it demonstrated that McGruder told Justin this information, and such information served as the motive for the McGruder's murder. *See Commonwealth v. Fisher,* 681 A.2d 130, 140 (Pa. 1996), *superseded on other grounds*

18

by 42 Pa.C.S. § 9711(a) (holding that the victim's statements about the defendant that were communicated to the defendant were not hearsay when the statements were offered to prove the defendant's motive for killing the victim). We discern no abuse of discretion or error of law.

Cooke, 2017 WL 3484136, at *5-6.

Cooke did not raise this issue on appeal to the Superior Court. See Cooke, 249 A.3d 1182.

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Pointer v. Texas, 380 U.S. 400, 403 (1965). The Confrontation Clause is applicable to the States through the Fourteenth Amendment. See Monachelli v. Warden, SCI-Graterford, 884 F.2d 749, 751 (3d Cir. 1989) (citing Pointer, 380 U.S. at 404). It does not guarantee criminal defendants "the absolute right to a face-to-face meeting with witnesses against them at trial." Maryland v. Craig, 497 U.S. 836, 844 (1990). The Clause's "central concern . . . is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Craig, 497 U.S. at 845. This right applies only to testimonial statements offered for their truth. Crawford v. Washington, 541 U.S. 36, 50-51, 59-60 n.9 (2004) (citing Tennessee v. Street, 471 U.S. 409, 414 (1985) ). If a witness is unavailable, hearsay testimony of that person is not admissible unless the defendant had a prior opportunity for cross-examination. Crawford, 541 U.S. at 68. However, the Confrontation Clause does not apply to non-testimonial statements or testimony that is not used for a hearsay purpose. Davis v. Washington, 547 U.S. 813, 823-24 (2006).

Federal Rule of Evidence 801(c) defines hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1), (2). Pennsylvania Rule of Evidence 801(c), which is identical to its federal counterpart, defines

hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Generally, statements that are hearsay are not admissible, unless the statement falls into one of the enumerated exceptions in the rule. Pa. R. Evid. 802. One such exception is a statement of the declarant's then-existing state of mind. Rule 803(3) provides an exception to hearsay for:

> A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

> Pa. R. Evid. 803(3).

When the prosecution seeks to introduce an unavailable declarant's out-of-court statement against an accused, courts must decide whether the offered statement is permissible under the Confrontation Clause. *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999). In *Lilly*, the Court recognized that testimony admitted pursuant to "a firmly rooted hearsay exception" did not violate the Confrontation Clause. 527 U.S. at 124.

Under Pennsylvania state law, "a witness may testify to statements made by another to the witness or to a third person when the purpose of this testimony is to evidence the effect the statement had upon the listener." *Commonwealth v. Wright*, 317 A..2d 271, 273 (Pa. 1974); *see also Commonwealth v. Smith*, 492 A.2d 9, 13 (Pa. Super. 1985) (statement made to or overheard by a witness is admissible when the purpose of the testimony is to evidence the effect which the statement had upon the listener). A determination as to whether a challenged statement is inadmissible hearsay "turns on the purpose for which it is offered." *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993). Testimony offered for the purpose of showing its

effect on the listener is a non-hearsay use and therefore admissible. *United States v. Lambinus*, 747 F.2d 592, 597 (10th Cir. 1984) (testimony offered for its effect on the listener is a non-hearsay use).

Here, the challenged hearsay was not offered to prove the truth of the matter asserted. Rather, it was offered to establish a motive for the killing. *Cooke*, 2017 WL 3484136, at *6. Specifically, it was admitted to establish motive for killing for the decedent by showing that there was ill-will between the decedent and Justin Cooke. *Cooke*, 2017 WL 3484136, at *6. The trial court further gave jury instructions in regards to motive and emphasized that Williams' testimony about the conversation she overheard between the decedent and Justin Cooke "was not offered to prove the truth or falsity of what happened with Mr. Beasle[y]'s killing. It was only offered to show a possible motive in the killing of Mr. McGruder. You are to accept that evidence only for that limited purpose." *Cooke*, 2017 WL 3484136, at *6 (quoting Trial Court Opinion, dated 7/19/16, at 11-12). Thus, the state courts found that this claim of trial counsel's ineffectiveness was not an abuse of discretion or error of law. *Cooke*, 2017 WL 3484136, at *7.

Because the state courts did not unreasonably apply clearly established federal and state law in rejecting Cooke's claim that Williams' testimony was inadmissible hearsay and because the testimony by Williams as to the conversation she overheard between the decedent and Justin Cooke falls under one of the well-settled exceptions to the hearsay rule, its admission did not implicate Sixth Amendment confrontation rights. *See Lilly*, 527 U.S. at 124; *Brown v. Burns*, No. 4:CV-13-1495, 2015 WL 7273320, at *8 (M.D. Pa. Nov. 18, 2015) (challenged hearsay not offered to prove truth of matter asserted but rather to show effect it

had on petitioner and, thus, did not implicate confrontation rights). Accordingly, denial of relief with respect to Cooke's hearsay argument is appropriate.

V. **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a certificate of appealability.

VI. **CONCLUSION**

Based on the foregoing reasons, Cooke's petition for a writ of habeas corpus (Doc. 1) is **DENIED**, and no certificate of appealability shall issue, as Cooke has not demonstrated "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2).

An appropriate Order follows.

BY THE COURT:

Dated: December 28, 2022

s/ *Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**

22